IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH J. CHILLINSKY, )<br>deceased, by William G. Chillinsky, )<br>       Plaintiff, )<br>)<br>      v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>       Defendant. ) | Civil Action No. 2:07cv566 |

**MEMORANDUM OPINION & ORDER**

Gary L. Lancaster,
United States District Judge.                                                                                  September 23, 2008

## I.    INTRODUCTION

Acting pursuant to 42 U.S.C. § 405(g), Deborah J. Chillinsky ("Plaintiff" or "Claimant"), seeks review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") disallowing her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.

## II.   PROCEDURAL HISTORY

Plaintiff filed an application for DIB benefits on April 20, 2005, alleging disability since January 21, 2003 due to neck problems, bilateral carpal tunnel syndrome, right upper extremity pain, right leg radiculopathy, severe depression, anxiety, and panic attacks. (R. 55). Plaintiff's claim was initially denied, and she filed a timely request for an administrative hearing. (R. 15). A hearing was held on July 13, 2006, in Latrobe, Pennsylvania, before Administrative Law Judge John J. Mulrooney, II ("ALJ"). (R. 24). Plaintiff was represented by counsel, A. Tereasa Rerko, and appeared and testified. (R. 372-408). An impartial vocational expert ("VE") was also present and gave testimony. *Id.* The ALJ issued an unfavorable decision on September 26, 2006, finding

that the Plaintiff was "not disabled" within the meaning of the Social Security Act. (R. 13-23). The ALJ's decision became the Commissioner's final decision when, on March 1, 2007, the Appeals Council denied Plaintiff's request for review. (R. 4-6). Administrative remedies thus being exhausted, Plaintiff brings the instant matter before this court, seeking judicial review of the Commissioner's decision. The parties have filed cross motions for summary judgment together with supporting briefs under Rule 56 of the Federal Rules of Civil Procedure, and the record has been developed at the administrative level. The matter is now poised for disposition.

## III. STATEMENT OF THE CASE

Plaintiff was born on November 13, 1958, making her forty-four (44) years old at the onset of the alleged disability, forty-six (46) at the time of application for DIB benefits and forty-seven (47) years old at the time of the administrative hearing. (R. 55-58, 327-408). Under the Commissioner's regulations, applicants under the age of fifty (50) are considered "younger individuals" and their age is not considered a significant impediment to adapting to new work situations. 20 C.F.R. § 416.963. Plaintiff earned her high school general equivalency diploma ("GED") in 1976 and the record reveals past relevant work experience as a home health aide from 1990 until the disability date. (R. 76, 81). The record reflects that plaintiff has not engaged in substantial gainful activity ("SGA") since then. (R. 75). She has been without health insurance since 2005, and currently her medical bills are not being paid. (R. 378). Approximately five months after the administrative hearing and three months after the ALJ's decision, on December 21, 2006, Plaintiff succumbed to the final transition.

Plaintiff lived with her husband, who has leukemia, and was dependent on him for income. (R. 378). She had three children and four grandchildren. *Id.*

2

Plaintiff was involved in a motor vehicle accident on May 5, 2002. (R. 306-307). Following this, Plaintiff began to experience substantial pain, mostly in her neck, right shoulder and right arm. *Id.* Plaintiff also complained of constant cramping in her right leg, and occasional cramping in her left leg. (R. 380).

Plaintiff was a patient of Kevin Wong, M.D. ("Dr. Wong") at Western PA Medical Associates from December 17, 2002, until February 12, 2005. (R. 262-270). Dr. Wong's notes reveal treatment of Plaintiff's pain with prescription pain medications. *Id.* On July 25, 2006, Dr. Wong completed a Physical Residual Functional Capacity Questionnaire. (R. 365-369). Answers on the questionnaire reflect Dr. Wong's opinion that Plaintiff experienced constant pain or other symptoms severe enough to interfere with even simple work tasks, and that Plaintiff was incapable of even "low stress" jobs. *Id.*

In January and February of 2003, Plaintiff endured bilateral carpal tunnel release surgeries by David Fowler, M.D. ("Dr. Fowler"). (R. 125-135). Plaintiff continued treatment with Dr. Fowler at East Suburban Orthopedic Associates until June 30, 2004. (R.193-207). Dr. Fowler's treatment notes indicate overall improvement with intermittent reports of recurring symptomatology. *Id.*

Plaintiff treated with Holistic Physical Therapy, Inc. From March to December 2003. (R. 136-190). Physical therapy treatment records denote pain associated with movement and diminished active range of motion. *Id.*

Dr. Fowler referred Plaintiff to Pain Med, PC, and Plaintiff was a patient of Mary Torchia, M.D. ("Dr. Torchia") at that clinic from June 30, 2003, until May 6, 2005. (R. 271-326). Dr. Torchia's treatment consisted of, in the main, trigger-point injections and prescription

medicines, including narcotic pain relievers, to alleviate Plaintiff's pain. *Id.* Dr. Torchia directed the surcease of the prescription narcotics, however, when it came to her attention that Plaintiff had violated her narcotic analgesic agreement with the clinic by, *inter alia*, engaging in questionable prescription refill activities. (R. 283). Plaintiff continued to receive the trigger-points and blocks at the clinic. (R. 271-326). Dr. Torchia's treatment notes include diagnoses of cervical disc disease, cervical paraspinal muscle spasm, myofascial pain syndrome, and lumbar strain/sprain. *Id.* Dr. Torchia's notes further indicate treatment of carpal tunnel syndrome, right arm pain, right scapulae pain, right trapezius pain, and neck pain. *Id.* Dr. Torchia also noted cramping in Plaintiff's legs. *Id.*

The record also reflects that Plaintiff suffered from and received treatment for mental impairments, specifically depression and anxiety. Plaintiff attended therapy sessions with Gary J. Panichella, LCSW ("Mr. Panichella") from March 2003 until January 2005. (R. 209-261). Mr. Panichella diagnosed Plaintiff with single episode major depression and generalized anxiety disorder. (R. 261). Mr. Panichella's session notes evince that Plaintiff's chronic pain was a factor contributing to her depression. (R. 209-261). Financial problems also played a role in her mental health problems. *Id.* The session notes also reveal that Plaintiff was taking an anti-depressant. *Id.*

Plaintiff was evaluated by John Carosso, Psy.D., ("Dr. Carosso") on July 25, 2005, upon referral from the Pennsylvania Bureau of Disability Determination. (R. 327-334). Dr. Carosso's report discloses that Plaintiff was prescribed anti-depressant and anti-anxiety medications. (R. 328). The report further acknowledges Plaintiff's depressed mood and panic episodes. (R. 329). Dr. Carosso attributed much of Plaintiff's depression and anxiety to her physical health issues.

4

(R. 330). Dr. Carosso diagnosed Plaintiff with Adjustment Disorder with Mixed Anxiety and Depressed Mood and assessed a Global Assessment of Functioning[1] ("GAF") of 50. (R. 331-332). Dr. Carosso indicated marked or extreme limitations in nearly all categories of work-related ability. (R. 333).

Edward Jonas, Ph.D., ("Dr. Jonas"), a state agency psychologist, completed a Mental Residual Functional Capacity Assessment form by reviewing the evidence in Plaintiff's case. (R. 335-352). Dr. Jonas' report specifies that Plaintiff's impairments do not meet any of the listing requirements under 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926) and that Plaintiff experienced mild to moderate limitation in the functions of daily living, social functioning and maintaining concentration, persistence or pace, with no episodes of decompensation. (R. 349). Other than noting marked limitations with understanding and carrying out detailed instructions and interacting appropriately with the public, Dr. Jonas rated Plaintiff as either not significantly limited or moderately limited in the four categories and twenty subcategories designed to facilitate assessing residual functional capacity on the form, unless there was no evidence of limitation in a given category. (R. 335-336). Dr. Jonas concluded, based upon his review of the record, that Plaintiff's limitations in all areas evaluated are significant, but not to the extent that they preclude her from engaging in routine work tasks. (R. 337). Dr. Jonas found Plaintiff's statements to be partially credible based upon the evidence of record. *Id*. Dr. Jonas stated that Dr. Carosso's report was not given full weight because of

---

[1]The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-R) (4th ed. 2000). A score between 41 and 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g. no friends, unable to keep a job). *Id*.

5

inconsistencies with the totality of evidence in the file. (R. 337-338). Dr. Jonas states in his report that Dr. Carosso's report was given appropriate weight and is partially consistent with his determination, which ultimately concluded that Plaintiff's limitations resulting from her impairments do not prevent her from engaging in regular work on a continuing basis. *Id*.

From March 4, 2004, until January 14, 2006, Plaintiff treated with Joel Last, M.D., ("Dr. Last"). (R. 357-364). Dr. Last submitted a report on July 11, 2006, indicating a diagnosis of major depression and general anxiety. *Id.* Dr. Last's report demonstrates Plaintiff to have slight to moderate limitation in all work-related abilities. *Id.*

Plaintiff's impairments had effected her daily activities in multitudinous ways. She was unable to maintain an orthodox sleeping routine due to her discomfort. (R. 397-398). She could not interact with her grandchildren in the manner in which she would have liked. (R. 396). She had difficulty going out in public and had panic attacks. (R. 381, 398-399). She also experienced difficulty sitting, walking and driving. (R. 387, 399-400). She had fallen on a couple of occasions due to the cramping in her legs. (R. 389-390). She was unable to do most household chores. (R. 387-388). Plaintiff mostly watched television during the day, although she did belong to a church and attended regularly. (R. 392-395)

At the administrative hearing, the testimony of the VE indicated that a hypothetical individual of Plaintiff's age, education and work experience and sharing Plaintiff's restrictions and limitations could perform work existing in the national economy as a system surveillance monitor or a bookkeeper[2]. (R. 403-407). The VE testified that if the individual were "off-task"

---

[2]For purposes of the Act, work "exists in the national economy" if it "exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "The ALJ must show that there are other jobs existing in significant numbers in the national

for more than 10% of the workday or missed work more than two days per month, such individual would likely be unable to persist in that position, or any other competitive employment. *Id.*

After determining that Plaintiff had met the insured status requirements of the Act through December 31, 2008, and that Plaintiff had not engaged in substantial gainful activity since her protective filing, the ALJ found Plaintiff's degenerative disc disease of the cervical spine, myofascial pain syndrome, history of lumber strain, bilateral carpal tunnel syndrome with residuals of bilateral carpal tunnel releases, adjustment disorder, pain disorder, major depressive disorder and generalized anxiety disorder to be severe impairments within the meaning of the Regulations, but did not meet or medically equal, either singly or in combination with other alleged impairments, any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). (R. 15-23). The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC")[3] to engage in work activity at the sedentary level subject to certain modifications allowing for Plaintiff's physical and mental limitations. (R. 18). Ultimately, the ALJ concluded that, although Plaintiff was unable to return to her past relevant work as a home health aide, a significant number of jobs existed in the national economy that Plaintiff could perform, considering her age, education, work experience and RFC, and therefore Plaintiff was not disabled within the meaning of the Act at any time relevant to the rendering of the ALJ's decision. (R. 21-22).

---

economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

[3]Residual functional capacity is "what [the claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a).

## IV. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents (her) from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if (her) physical or mental impairment or impairments are of such severity that (she) is not only unable to do (her) previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To

support his ultimate findings, an ALJ must do more than state factual conclusions. He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and must provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 U.S.C. § 405(a), has developed a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determined whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimants age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§404.1520(f), 404.1560(c), 416.920(f), 416.960(c).
>
> *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

Hence, as a general matter, a claimant seeking benefits under the Act may establish the existence

of a statutory disability by (1) introducing medical evidence that she is *per se* disabled as a result of an impairment appearing in the Listing of Impairments or (2) demonstrating that the functional limitations caused by her impairments effectively preclude her from returning to her past relevant work and from performing other jobs existing in significant numbers in the national economy. *Stunkard*, 849 F.2d at 59.

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corporation*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Id.* at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the court's review is limited to the four corners of the ALJ's decision.

V. **DISCUSSION**

Plaintiff argues that the ALJ's determination merits reversal or remand by this court for several reasons. First, Plaintiff asserts that the ALJ erred in failing to find that Plaintiff's impairments do not meet or equal any of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff argues that because the ALJ does not discuss or evaluate any

medical evidence in the record or the requirements under the Listings to support his findings, he provides no basis for his conclusions which constitutes error as a matter of law.

In his step three finding, the ALJ determined that Plaintiff is not disabled *per se*, as none of her impairments reached listing level severity. The ALJ considered Plaintiff's impairments under listings 1.02, 1.04, 12.04, 12.05, and 12.06. He then explained why Plaintiff's condition failed to meet at least one requirement under each one. While it is true that the ALJ did not discuss or evaluate medical evidence from the record in announcing his decision in this section, the court could only charge error for that omission if required to read each finding in the ALJ's report in a vacuum. No such requirement has been recognized by the Third Circuit or the Supreme Court. In a well-reasoned nine page decision, the ALJ conducts a thorough and comprehensive review of the medical evidence contained in the record. Although the analysis of the medical evidence appears in places in the decision other than under the step three finding, the court recognizes that it applies with equal force to that section. It is true, as plaintiff avers, that the ALJ must set out a specific factual basis for each finding. *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974). The court finds that the ALJ has done so here.

The remainder of Plaintiff's argument under this assignment of error consists of reiterating the evidence present in the record and insisting that such evidence mandates reaching the antithetical result. The ALJ's decision, however, is predicated upon his analysis of the evidence contained in the record. This court can not say that the evidence is not substantial. Nor can it be said that the ALJ's conclusion is unreasonable. Accordingly, it is not the province of this court to disturb those findings on review, but rather to defer to the ALJ's decision when those findings are supported by substantial evidence. See *Knepp v. Apfel*, 204 F.3d 78, 83 (3d

Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)(quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

Plaintiff next alleges error in the ALJ's determination that Plaintiff retained the RFC for sedentary work. Plaintiff asserts that the ALJ's finding lacks evidentiary support and that the ALJ substituted his own medical opinion for that of the medical professionals submitting reports for the record. The court disagrees with this characterization of the ALJ's RFC determination. In arriving at the determination of plaintiff's RFC and the conclusion that plaintiff is capable of performing sedentary work, the ALJ considered all of plaintiff's symptoms that are reasonably supported by the objective medical evidence and other evidence contained in the record. The ALJ conducted a seriatim review of the medical evidence of record and found the reports of Dr. Carosso and Dr. Wong were entitled little weight as the conclusions therein bore against the objective findings. These types of check-the-box reports, even when completed by a primary care physician, are entitled to less evidentiary weight than other substantive medical evidence. "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Furthermore, a treating physician's opinion that a claimant is "disabled" or "unable to work" is not dispositive or entitled to special deference. See *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994); 20 CFR §§ 404.1527(e), 416.927(e). Plaintiff bears the burden of showing that she lacks the RFC ascribed by the ALJ. See *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). This Plaintiff has failed to do. Because the court finds that the ALJ's RFC determination is supported by substantial evidence and is not unreasonable, that finding will not be disturbed.

Plaintiff further argues that the ALJ erred in finding mild limitations in performing activities of daily living, moderate limitations in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace. Plaintiff again challenges the finding as being in contradistinction to the medical evidence present in the record. Plaintiff's argument supporting this assignment of error is substantively indistinguishable from the error assigned to the ALJ's RFC determination, and the court therefore adopts that same analysis here, concluding that the ALJ's findings regarding Plaintiff's limitations of daily living, social functioning and concentration, persistence, and pace enjoy the support of substantial evidence and are not unreasonable.

Next Plaintiff avows that the ALJ's decision does not adequately explain why portions of medical opinions in the record were not accepted. On this point, Plaintiff merely argues that portions of the evidentiary record attributable to Drs. Wong, Torchia, Carosso, Fowler, and Mr. Panichella, were discounted by the ALJ although not contradicted by other medical evidence present and without sufficient explanation.

Again the court can not accede. As an initial matter, the court notes that the ALJ's decision contains an exhaustive examination of the medical evidence of record and where an opinion is afforded little weight the ALJ provides an explanation offering his reasoning. Moreover, based on the compendious argument advanced by Plaintiff on this theme, the court fails to see in what particulars Plaintiff is alleging error. Because the court finds that the ALJ conducted a consummate analysis of the medical evidence of record and advanced an articulate and intelligent *ratio decidendi* for his findings, and because those findings are supported by substantial evidence of record and are reasonable, the court finds no error in the ALJ's medical

evidence evaluation.

Plaintiff's fifth challenge to the ALJ's decision is that it was error for the ALJ to conclude that Plaintiff's testimony concerning the intensity, duration and limiting effects of her symptoms are not entirely credible. Plaintiff argues that the ALJ relied on an improper evidentiary standard in making his credibility determination and that Plaintiff's long work history entitles her to substantial credibility. See, e.g., *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). An ALJ is not required to give considerable weight to subjective complaints that are not supported by medical evidence. See *Schaudeck v. Comm's of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). While it is true that a long and productive work history is one factor for an ALJ to consider in making a credibility determination, it is not to the exclusion of other factors such as evidence in the record or attempting to return to work. Dr. Jonas' functional capacity assessment stated that Plaintiff's allegations were partially credible. Moreover, the ALJ has authority to make credibility determinations. *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983). "Because he had the opportunity observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90. (4th Cir. 1984). The ALJ's credibility determinations need only be supported by substantial evidence on the record. Here, the ALJ considered Plaintiff's subjective complaints and assessed them in the context of the entirety of the medical evidence, determining her statements concerning the effects of the symptoms were not entirely credible. R. 19. Therefore, substantial evidence supports the ALJ's credibility determination.

Plaintiff's penultimate contention is that the ALJ improperly discounted the medical

14

opinions of Drs. Carosso, Last and Wong and the state agency medical consultant. The primary thrust of Plaintiff's polemic on this point is that the medical opinions of Plaintiff's treating physicians were rejected without adequate explanation and the opinions were uncontroverted in the record. Plaintiff maintains that the ALJ substituted his own lay opinion for that of the medical professionals offering competent medical evidence in Plaintiff's case in reaching the conclusion that Plaintiff's impairments do not rise to the level of disability as defined by the Act. The Court finds this position problematic. A critical reading of the ALJ's decision reveals that the ALJ did conduct a thorough review of the evidence in reaching his conclusion and that the ALJ provided a comprehensive analysis of the evidence in making his determination. The court has addressed the sufficiency of the ALJ's treatment of the reports by Drs. Carosso and Wong above, and will not belabor the point by again doing so here. The ALJ addressed Dr. Last's report and accurately reported that "Dr. Joel Last, her treating psychiatrist, concluded she was only moderately limited in her ability to carry out detailed instructions, interact appropriately with supervisors and respond appropriately to work pressures in a usual work setting and changes in a routine work setting." (R.19). Moreover, Dr. Last's report does not indicate marked limitations in any work-related category. The state agency medical consultant's assessment is likewise given a detailed analysis by the ALJ and was given appropriate weight. The court notes that the marked limitations indicated on the report were incorporated into the ALJ's RFC assessment. Furthermore, the state agency medical examiner concludes, "The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." (R. 338). As such, the court can not find that the ALJ's conclusions based on the medical evidence contained in the record are either erroneous or

15

unreasoned.

Finally, Plaintiff asseverates that the ALJ improperly found that hypothetical questions to the VE by Plaintiff's counsel at the administrative hearing included facts that lacked support in the record. Hypothetical questions to a vocational expert must accurately reflect all of a claimant's credibly established limitations. See *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). As such, the ALJ may exclude limitations that are "reasonably discounted" by the evidence. *Rutherford*, 399 F.3d at 555. Because the court holds that the ALJ's determination of Plaintiff's impairments was based on sufficient medical evidence in the record and was not unreasonable, the court is constrained to find that the ALJ's rejection of Plaintiff's counsel's additional questions imputing greater functional limitations to Plaintiff than those supported by the record to be likewise reasonable.

In order for a claimant to establish a disability under the Act, "[t]he physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work." *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987)(citations omitted). Plaintiff bears the burden of proving her impairments are sufficiently severe to satisfy the standard. See *Id*. at 146 n. 5. This Plaintiff has failed to do.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the decision of the ALJ was supported by substantial evidence. Accordingly, defendant's Motion for Summary Judgment [document #17] is GRANTED, plaintiff's Motion for Summary Judgment [document #11] is DENIED and the decision of the ALJ will be affirmed.

s/Gary L. Lancaster
Gary L. Lancaster
United States District Judge

cc: A. Tereasa Rerko, Esquire
Quatrini Rafferty Galloway
Underwood Center
550 East Pittsburgh Street
Greensburg, PA 15601
*for the Plaintiff*

Jessica Lieber Smolar
Assistant U.S. Attorney
Western District of Pennsylvania
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219
*for the Commissioner*